# 25-2191-cv

## United States Court of Appeals
### for the
### Second Circuit

LOST LAKE HOLDINGS LLC, a domestic limited liability company, MISHCONOS MAZAH LLC, a domestic limited liability company, RABBI MORDECHAI HALBERSTAM, ROSE HALBERSTAM,

*Plaintiffs-Appellants,*

– v. –

TOWN OF FORESTBURGH, FORESTBURGH ZONING BOARD OF APPEALS, GLENN A. GABBARD, in his personal capacity and in his official capacity as Building Inspector of the Town of Forestburgh, THE FORESTBURGH TOWN BOARD, STEVE BUDOFSKY, in his personal capacity, SUSAN PARKS-LANDIS, in her personal capacity, KAREN ELLSWEIG, in her personal capacity, VINCENT GALLIGAN, in his personal capacity, DANIEL S. HOGUE, in his personal capacity, RICHARD ROBBINS, in his personal capacity and in his official capacity as Chairperson of the Planning Board of the Town of Forestburgh, DENNIS KETCHAM, in his capacity as Town Assessor of the Town of Forestburgh,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR PLAINTIFFS-APPELLANTS

STORZER & ASSOCIATES, P.C.
*Attorneys for Plaintiffs-Appellants*
1025 Connecticut Avenue, NW
Suite 1000
Washington, DC 20036
(202) 857-9766

CP COUNSEL PRESS    (800) 4-APPEAL • (390816)

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................ iii

INTRODUCTION ...................................................................................1

I.     PRUDENTIAL RIPENESS DOES NOT APPLY TO FAIR HOUSING ACT CLAIMS ................................................................2

II.    DEFENDANTS' RULE 12 MOTION TO DISMISS WAS UNTIMELY ....................................................................................4

III.   THE COURT'S *BMG* DECISION IS FACTUALLY DISTINGUISHABLE...........................................................................4

IV.   DEFENDANTS FAIL TO REBUT PLAINTIFFS' ARGUMENT THAT THE FIRST AMENDED COMPLAINT ALLEGES, AND THE RECORD DEMONSTRATES, THAT THE BUILDING PERMIT APPLICATIONS WERE COMPLIANT ........................................5

     A.    The *BMG* Building Permits Violated Land Use Approval Conditions ...........................................................................5

     B.    Unlike *BMG*, No Court Has Affirmed the ZBA's Determination Here ....................................................................6

     C.    Defendants' Justification of the ZBA Decision is Inappropriate and Substantively Lacking.................................8

V.     DEFENDANTS IGNORE THIS COURT'S HOLDING IN *SUNRISE DETOX*...............................................................................11

     A.    Plaintiffs' Compensatory Damages Claims Are Ripe.........................11

     B.    Plaintiffs' Claims Against the Town's Discriminatory Anti-Hasidic Zoning Policy Are Ripe.................................12

     C.    Defendants Fail to Address the Town's Manipulation of the Zoning Process ............................................................13

VI.   DEFENDANTS FAIL TO REBUT PLAINTIFFS' ARGUMENTS REGARDING FUTILITY ........................................................14

i

A. Defendants Concede the Town Lacks Discretion to Grant Variances, and Modifications to the PDD Zoning Are Unavailable ................................................................14

B. Defendants Ignore Overwhelming Evidence that the Town has "Dug In Its Heels." ..............................................16

VII. DEFENDANTS' ARGUMENT THAT THERE ARE NO IMMEDIATE, INDEPENDENT INJURIES SHOULD BE REJECTED ................................................................19

VIII. DEFENDANTS HAVE NOT REBUTTED PLAINTIFFS' ARGUMENT THAT THE DISTRICT COURT ERRED IN DISMISSING THEIR FACIAL CHALLENGES TO THE TOWN BOARD RESOLUTIONS ................................................22

A. Plaintiffs State Facial Claims When Alleging Defendants' Facially Neutral Policy Was Motivated by Discriminatory Animus and Has an Adverse Effect .....................................22

B. Plaintiffs Have Standing to Challenge the Parks and Playground Fee Increase ..............................................25

IX. DEFENDANTS FAIL TO REBUT PLAINTIFFS' ARGUMENT THAT THEIR FHA RETALIATION CLAIM WAS IMMEDIATELY RIPE ................................................26

X. DEFENDANTS FAIL TO REBUT PLAINTIFFS' ARGUMENTS THAT THEIR DUE PROCESS CLAIMS ARE RIPE ................................................28

XI. PLAINTIFFS' STATE LAW CLAIMS ARE RIPE ................................................29

A. New York Civil Rights Law § 40-c ..............................................29

B. Interference with Prospective Business Advantage ..............................................30

C. N.Y. C.P.L.R. Article 78 ..............................................30

CONCLUSION ................................................32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
880 F.3d 1345 (Fed. Cir. 2018) ...................................................................2

*BMG Monroe I, LLC v. Vill. of Monroe Zoning Bd. of Appeals*,
215 A.D.3d 954 (2023) ..............................................................................4, 6

*BMG Monroe I, LLC v. Vill. of Monroe*,
2022 WL 1094538 (S.D.N.Y. Apr. 12, 2022), *aff'd*, 93 F.4th 595
(2d Cir. 2024)..................................................................................... *passim*

*Bulson v. Town of Brunswick*,
No. 1:24-CV-503 (LEK/DJS), 2025 WL 743950
(N.D.N.Y. Mar. 7, 2025)...........................................................................27

*Chinese Am. Citizens All. of Greater New York v. Adams*,
116 F.4th 161 (2d Cir. 2024) ....................................................................24

*Concern for Indep. Living, Inc. v. Town of Southampton, New York,
Town Bd. of the Town of Southampton*,
No. 2:24-CV-7101 (NJC) (JMW), 2026 WL 707387
(E.D.N.Y. Mar. 12, 2026) .........................................................................12

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*,
138 F. Supp. 3d 352 (S.D.N.Y. 2015), *aff'd*, 945 F.3d 83 (2d Cir. 2019) .........25

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*,
915 F. Supp. 2d 574 (S.D.N.Y. 2013), *aff'd*, 945 F.3d 83
(2d Cir. 2019) ("*Tartikov*") ................................................... 22, 23, 24

*Connecticut v. Duncan*,
612 F.3d 107 (2d Cir. 2010) .......................................................................8

*D'Addario v. D'Addario*,
901 F.3d 80 (2d Cir. 2018) .........................................................................8

*Dixon v. von Blanckensee*,
994 F.3d 95 (2d Cir. 2021) .........................................................................6

*Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*,
282 F.3d 83 (2d Cir. 2002) ............................................. 21, 26, 27, 28

*Fair Hous. in Huntington Comm. Inc. v. Town of Huntington*,
  316 F.3d 357 (2d Cir. 2003) ..................................................................3

*Filmways Commc'ns of Syracuse, Inc. v. Douglas*,
  106 A.D.2d 185, *aff'd,* 65 N.Y.2d 878 (1985) ...................................28

*Groome Res. Ltd. v. Parish of Jefferson*,
  234 F.3d 192 (5th Cir. 2000) ...............................................................13

*Horne v. Dep't of Agric.*,
  569 U.S. 513 (2013).............................................................................3

*Hyman v. Cornell Univ.*,
  834 F. Supp. 2d 77 (N.D.N.Y. 2011), *aff'd,* 485 F. App'x 465
  (2d Cir. 2012)......................................................................................29

*IBM Corp. v. Edelstein*,
  526 F.2d 37 (2d Cir. 1975) ..................................................................7

*Jinks v. Richland Cnty.*,
  538 U.S. 456 (2003).............................................................................31

*Lost Lake Resort, Inc. v. Bd. of Assessors for Town of Forestburgh*,
  222 A.D.3d 1091 (2023).......................................................................12

*Lubavitch of Old Westbury, Inc. v. Inc. Vill. of Old Westbury*,
  No. 208CV5081DRHARL, 2021 WL 4472852
  (E.D.N.Y. Sept. 30, 2021)................................................................ 13-14

*Mehrhof v. Monroe-Woodbury Cent. Sch. Dist.*,
  168 A.D.3d 713 (2019) ........................................................................30

*Mhany Mgmt., Inc. v. Cnty. of Nassau*,
  819 F.3d 581 (2d Cir. 2016) ................................................................23

*Murphy v. New Milford Zoning Comm'n*,
  402 F.3d 342 (2d Cir. 2005) ............................................................ 2, 15, 19

*Nat'l Org. for Marriage, Inc. v. Walsh*,
  714 F.3d 682 (2d Cir. 2013) ................................................................3

*Osborne v. Fernandez*,
  No. 06-CV-4127CSLMS, 2009 WL 884697 (S.D.N.Y. Mar. 31, 2009),
  *aff'd*, 414 F. App'x 350 (2d Cir. 2011)........................................... 27-28

*Pakdel v. City & Cnty. of San Francisco*,
  594 U.S. 474 (2021)............................................................................3

iv

*Palmore v. Sidoti*,
466 U.S. 429 (1984)................................................................17

*Parsons v. Zoning Bd. Of Appeals*,
4 A.D.3d 673 (2004) ..............................................................31

*Patriots Way, LLC v. Marconi*,
No. 06–CV–874, 2007 WL 988712 (D. Conn. Mar. 30, 2007).........................27

*Pyke v. Cuomo*,
258 F.3d 107 (2d Cir. 2001) ....................................................22

*Robinson v. 12 Lofts Realty, Inc.*,
610 F.2d 1032 (2d Cir. 1979) ...................................................24

*Sherman v. Town of Chester*,
No. 12 CIV.647 ER, 2013 WL 1148922 (S.D.N.Y. Mar. 20, 2013),
*aff'd in part, vacated in part on other grounds, remanded*,
752 F.3d 554 (2d Cir. 2014) .............................................. 3, 8, 19, 27

*Stewart B. McKinney Found., Inc. v. Town Plan & Zoning Comm'n of
Town of Fairfield*,
790 F. Supp. 1197 (D. Conn. 1992).........................................24

*Suitum v. Tahoe Reg'l Plan. Agency*,
520 U.S. 725 (1997)..................................................................3

*Sunrise Detox V, LLC v. City of White Plains*,
769 F.3d 118 (2d Cir. 2014) ..................................................... *passim*

*Swantz v. Plan. Bd. of Vill. of Cobleskill*,
34 A.D.3d 1159 (2006) ...........................................................15

*United States v. Yonkers Bd. of Educ.*,
837 F.2d 1181 (2d Cir. 1987) ..................................................17

*Vill. Green At Sayville, LLC v. Town of Islip*,
43 F.4th 287 (2d Cir. 2022) ............................................. 2, 8, 13, 21

*Washington v. Davis*,
426 U.S. 229 (1976)..................................................................22

*Westchester Day Sch. v. Vill. of Mamaroneck*,
417 F. Supp. 2d 477 (S.D.N.Y. 2006), *aff'd,* 504 F.3d 338
(2d Cir. 2007)..........................................................................31

v

*Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*,
    473 U.S. 172 (1985), *overruled on other grounds by Knick v. Twp. of
    Scott*, 588 U.S. 180 (2019) ............................................................ *passim*

**Statutes and Other Authorities:**

28 U.S.C. § 1367 ................................................................... 7, 31

42 U.S.C. § 1317 .........................................................................26

Fed. R. Civ. P. 12 .........................................................................4

6 N.Y.C.R.R. § 617.3(g) (2026) ....................................................9

N.Y. Civ. Rights Law § 40-c (McKinney) ...................................29

N.Y. C.P.L.R. §§ 7801, *et seq.* (McKinney) ........................... 30, 31

N.Y. Town Law § 267-b (McKinney) ...................................... 15, 20

N.Y. Town Law § 267-c (McKinney) ...........................................31

## INTRODUCTION

In their Brief for Defendants-Appellees ("DB") (Doc. No. 75.1), Defendants materially misrepresent the record and a recent state court decision, including falsely claiming that Plaintiffs did not challenge their motion to dismiss as untimely. Defendants also treat Plaintiffs' challenge as limited to the ZBA denial, when–unlike in *BMG Monroe I, LLC v. Village of Monroe,* 93 F.4th 595, 598-600 (2d Cir. 2024) ("*BMG*")–the Town went much further by unilaterally suspending *any* further development of the Lost Lake Project, while the original ZBA decision permitted ongoing development.

Defendants ignore controlling precedent that *Williamson County*'s prudential ripeness doctrine is not jurisdictional and therefore has no application to Plaintiffs' Fair Housing Act ("FHA") claims. They also attribute to one key Defendant the vile antisemitism polluting the Town, ignoring the vast evidence and allegations of antisemitic motivation on the part of Town officials and those to whom they are responsive, and the undeniable evidence of collusion between public and private individuals to stop "[t]he community [being] wrecked forever" by Hasidic Jews. Defendants' brief misapplies the law and fails to rebut Plaintiffs' arguments regarding their facial challenges to Town Board action; the independent injuries of dignitary harm and a discriminatory anti-Hasidic zoning policy; the lack of

discretion to grant variances or modify the PDD, Plaintiffs' retaliation claims; and

the inapplicability of *Williamson County* to several of Plaintiffs' state law claims.

Going far beyond the allegations in Plaintiffs' Complaint, Defendants claim

that Plaintiffs plan a "materially different . . . development," but the only difference

actually supported by the record is that Hasidic Jews may live there. The Court

should not be fooled: Plaintiffs intend to build *only* what was allowed. The religious

faith of potential residents does not change that.

## I.  PRUDENTIAL RIPENESS DOES NOT APPLY TO FAIR HOUSING ACT CLAIMS.

Defendants' argument that *Williamson County's* prudential ripeness

considerations are "jurisdictional" lacks merit. DB at 15-16, 32, 35-38, 40-42;

*Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S.

172, 186-96 (1985), *overruled on other grounds by Knick v. Twp. of Scott*, 588 U.S.

180 (2019). They ignore this Court's holding in *BMG*[1] that "*Williamson County*'s

---

[1] While this Court did apply *Williamson County's* holding to the plaintiffs' FHA claim in *BMG*, the issue of prudential limitations on the plaintiff's FHA standing was neither raised nor addressed. *BMG Monroe I*, 93 F.4th at 598-604; *see Arthrex, Inc. v. Smith & Nephew, Inc.*, 880 F.3d 1345, 1349 (Fed. Cir. 2018) ("When a prior decision does not 'squarely address[] [an] issue,' a court remains 'free to address the issue on the merits' in a subsequent case." (citations omitted)). Plaintiffs also recognize that *Vill. Green At Sayville, LLC v. Town of Islip*, 43 F.4th 287, 296 (2d Cir. 2022), uses the phrase "jurisdictional prerequisite"; however, it was quoting its 2005 decision in *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347-48 (2d Cir. 2005), which specifically acknowledged that "prudential limitations" were at issue.

prudential-ripeness doctrine 'is not, strictly speaking, jurisdictional,' . . . ." 93 F.4th at 600 (citation omitted); *see also Sherman v. Town of Chester*, 752 F.3d 554, 561 (2d Cir. 2014) ("*Williamson County* is a prudential rather than a jurisdictional rule" (citation omitted)). Regardless, the Supreme Court has held that it is not a jurisdictional rule. *Horne v. Dep't of Agric.*, 569 U.S. 513, 526 (2013); *Pakdel v. City & Cnty. of San Francisco,* 594 U.S. 474, 476 (2021) (describing *Williamson County* as a "since-disavowed prudential rule"); *Knick,* 588 U.S. at 204; *Suitum v. Tahoe Reg'l Plan. Agency*, 520 U.S. 725, 734 (1997) (*Williamson County* established "prudential hurdles").

Defendants do not otherwise challenge Plaintiffs' argument that since ripeness is "a specific application of the actual injury aspect of Article III standing," *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013), and FHA claims are not subject to prudential standing limits, *Fair Hous. in Huntington Comm. Inc. v. Town of Huntington*, 316 F.3d 357, 362 (2d Cir. 2003), *Williamson County's* prudential limitation does not apply to Plaintiffs' FHA claims. *See generally* Brief and Special Appendix for Plaintiffs-Appellants ("OB") at 18-29 (Doc. No. 22.1); Brief of American Jewish Committee, *et al.* as *Amici Curiae* Supporting Plaintiffs-Appellants (Doc. No. 49.1) at 12-28.

3

## II. DEFENDANTS' RULE 12 MOTION TO DISMISS WAS UNTIMELY.

As described in Plaintiffs' Opening Brief, Defendants' motion to dismiss was untimely under both Federal Rule of Civil Procedure 12(b)(1) and 12(c). OB at 22. Defendants' statement that "Plaintiffs raised no procedural objection to Defendants' use of Rule 12(c) below" is false. DB at 42. In their Memorandum in Opposition to Defendants' Motion to Dismiss, Plaintiffs explicitly did so, arguing that "Defendants' Motion to Dismiss is untimely. . . . Motions brought under Rule 12(c) must be brought 'early enough not to delay trial . . . .'" ECF No. 176 at 12 (filed Feb. 28, 2025).

Defendants also argue that, with respect to Rule 12(b)(1), the issue of prudential ripeness is a "jurisdictional prerequisite, . . . ." DB at 42. As described above, this is contrary to the precedents of this Court and the Supreme Court.

## III. THE COURT'S *BMG* DECISION IS FACTUALLY DISTINGUISHABLE.

Both the Defendants and the district court's opinion rely heavily on *BMG*, 93 F.4th 595. However, *BMG* involved a challenge to a zoning board's denial of specific building permits that a state court held–and the district court and this Court recognized–were not in conformity with the approval conditions. *BMG Monroe I, LLC v. Vill. of Monroe Zoning Bd. of Appeals*, 215 A.D.3d 954, 955 (2023); *BMG Monroe I, LLC v. Vill. of Monroe*, 2022 WL 1094538, at *5 (S.D.N.Y. Apr. 12,

4

2022), *aff'd*, 93 F.4th 595, 602-03. *BMG* did not involve a municipality's wholesale termination of a project via legislative resolution, making what was once approved now unapproved. In fact, in *BMG*, the developer was able to continue building compliant homes, including the homes at issue in that case. *BMG Monroe I*, 2022 WL 1094538, at *6. Defendants' attempt to analogize Plaintiffs' broader challenge–to new laws, retaliation, and a total development ban–to the narrow building permit issue in *BMG* must be rejected.

## IV. DEFENDANTS FAIL TO REBUT PLAINTIFFS' ARGUMENT THAT THE FIRST AMENDED COMPLAINT ALLEGES, AND THE RECORD DEMONSTRATES, THAT THE BUILDING PERMIT APPLICATIONS WERE COMPLIANT.

A. The *BMG* Building Permits Violated Land Use Approval Conditions.

In *BMG*, the court held that the applicable zoning of the property included specific design conditions that were unquestionably part of the zoning regulation and planning board approval for the property. *BMG Monroe I*, 2022 WL 1094538, at *3. Unlike here,[2] there were actual conditions and mitigation measures that prohibited the sought permits. *See, e.g., BMG Monroe I*, 2022 WL 1094538, at *3, *4.

---

[2] Conditions of approval for the Lost Lake PDD are found at JA-909-910. The Findings Statement designates mitigation measures. *See, e.g.,* JA-859, JA-871-875, JA-882-884 (examples of mitigation measures).

Significantly, in *BMG*, a state court upheld the decision of the ZBA. *BMG Monroe I*, 2022 WL 1094538, at *7 (noting that "[t]he state court found BMG failed 'to demonstrate that'" the ZBA's action "was illegal, arbitrary or capricious, or an abuse of discretion."). *See also BMG Monroe I*, 215 A.D.3d at 955.

B. Unlike *BMG*, No Court Has Affirmed the ZBA's Determination Here.

Defendants repeatedly reference (yet fail to provide[3]) a decision in their retaliatory state court action, *Town of Forestburgh v. Lost Lake Holdings*, *LLC*, Index No. E2023-186 (Sup. Ct. Sullivan Cnty. Jan. 13, 2026) [NYSCEF Doc. No. 225] ("State Court Decision"). Defendants analogize to *BMG*, *see* DB at 11-13, 23-25; however, unlike *BMG*, here the State Court Decision was explicitly silent on the correctness of the ZBA's decision. Instead, it stated that the ZBA's "determination has never been appealed and remains controlling." *Town of Forestburgh*, Index No. E2023-186, at 4 (emphasis added). Respectfully, this finding was in error. Plaintiffs *did* appeal the ZBA's decision as Count XXII of their Amended Complaint here,

---

[3] The State Court Decision can be found at https://iapps.courts.state.ny.us/fbem/DocumentDisplayServlet?documentId=KkrxDInLqmvgqyDhyOI33Q==&system=prod, and has been appealed. Notice of Appeal, Index No. E2023-186 (Feb. 13, 2026) (https://iapps.courts.state.ny.us/nyscef/ViewDocument?docIndex=znBq9i5QH6OV8xVYzi0bIA==). *See Dixon v. von Blanckensee*, 994 F.3d 95, 102 (2d Cir. 2021) (Court has discretion to take judicial notice of documents not part of the record).

brought under New York Civil Practice Law and Rules Article 78, and the district court's supplemental jurisdiction under 28 U.S.C. § 1367.[4] *See* JA-127 ¶¶ 600-602.

Defendants wrongly state that "[t]he State Supreme Court has now ruled, as a matter of law, that Plaintiffs' project does *not* comply with the governing PDD" and that it "[e]xplicitly reject[ed] Plaintiffs' position, . . . ." DB at 24; *see also id.* at 13, 22-23. Not so, as the state court merely deferred to the ZBA's decision, erroneously believing it was not appealed and therefore "controlling." State Court Decision at 3-4.[5]

Finally, the State Court Decision in no way addresses the Town's later wholesale termination of the approvals, nor the other retaliatory and independent injuries alleged. Issued months after the district court's dismissal—it was never part of the record below and should not now be bootstrapped into a post-hoc rationale for affirmance. "[A]bsent extraordinary circumstances, federal appellate courts will not consider rulings or evidence which are not part of the trial record." *IBM Corp. v. Edelstein*, 526 F.2d 37, 45 (2d Cir. 1975).

---

[4] *See infra*, § XI(C).

[5] Defendants' criticism of the *amici curiae* arguments also stems from this oversight. DB at 43-44.

C. Defendants' Justification of the ZBA Decision is Inappropriate and Substantively Lacking.

The Court must accept Plaintiffs' factual allegations as true when ruling on Defendants' motion to dismiss, and appeal thereof, including with respect to ripeness. *See generally* JA-85-101 ¶¶ 313-432 (alleging that building permits were fully in conformity with the Project approvals). *See also Sherman*, 752 F.3d at 557 (where ripeness was at issue, Court "assume[s] [facts] are true for the purposes of . . . appeal."); *D'Addario v. D'Addario*, 901 F.3d 80, 86, n.1 (2d Cir. 2018) (allegations taken as true in appeal on ripeness grounds); *Connecticut v. Duncan*, 612 F.3d 107, 115 (2d Cir. 2010) (in appeal of ripeness determination, the Court "accept[s] all material allegations of the complaint as true for the purposes of a motion to dismiss" ); *Vill. Green At Sayville*, 43 F.4th 287, 299 (2d. Cir. 2022) ("[T]aking as true the material factual allegations in the complaint–as at this stage we must– . . . . [W]e conclude that Village Green's claims are ripe.").

Nevertheless, Defendants argue Plaintiffs' attempt to develop the Site *as approved* is a "Radical Deviation" from said approvals. DB at 8. The Findings Statement states that an environmental assessment will be required if there is a significant deviation from the "approved Master Plan . . . ." JA-835. Plaintiffs have proposed no such deviation from the approved Master Plan, which itself contains no conditions on who can build or live in homes, and Defendants do not argue and cannot show any deviation. *See also* ECF No. 117 (demonstrating compliance).

8

Similarly, Defendants are wrong in stating that "The 2011 PDD Rezoning Approval incorporated and required the . . . 2013 Design Guidelines, and 2013 CC&R . . . ." DB at 7. The 2011 PDD Rezoning Resolution contains no such requirement. JA-903-912.

Defendants' suggestion that Plaintiffs will not do a "gradual buildout, over several decades" must also be rejected. DB at 7. First, there is no condition requiring a "gradual" buildout. Second, state law and the Findings Statement both required a SEQRA analysis of the "fully built project" (JA-884), not an "envisioned" (JA-1161; JA-1207) portion of the same. "The entire set of activities or steps must be considered the action, . . . (1) Considering only a part or segment of an action is contrary to the intent of SEQR." N.Y. Comp. Codes R. & Regs. tit. 6, § 617.3(g) (2026). Further, Plaintiffs likewise engaged in a "gradual buildout," as demonstrated by their initial building applications for only fifteen homes. JA-261.

Here, and unlike in *BMG*, neither the Project zoning, site plan approvals, or Findings Statement imposed or stated conditions or "mitigation measures" controlling who would live or build the homes. JA-909-912; JA-408-414; JA-830-902. Plaintiffs do not argue that such "mitigation measures" are "pretextual" (DB at 24, 25); rather, no such conditions exist at all.

Notably, while Defendants contend that "[t]he approvals **did not** authorize Double Diamond to build and sell single-family dwellings" (DB at 8), neither the

9

zoning or site plan approval conditions *prohibited* the developer from doing so, nor did they restrict the building of homes only to individual owners, with a certain demographic, or of a certain faith, but only that "Single Family Dwellings" would be an allowable use. JA-986-1019; JA-408-414; JA-988. Even if such restrictions existed, they would be unenforceable, as New York law does not allow the Town to control *who* can own or build on real property. *See* OB at 30-31.

There is also no evidence that the Project would have a different so-called "second home" demographic than what was discussed by Double Diamond. Rather, Plaintiffs' expected second home market demand was *greater* than Double Diamond's. JA-1477-1478 ¶¶ 76-82, ECF No. 99-18 at 40:9-41:3; ECF No. 119 ¶¶ 9-17.

The claim that the approvals "expired on their own terms" (DB at 9) is also false as demonstrated by the fact that the Town continued to process and even grant an application for a building permit before opposition to the Project fully coalesced. *See* OB at 10; SPA-5-6.

Further, Defendants' reliance on *BMG* is limited to Plaintiffs' challenge to the denial of the building permits at issue.[6] The developer in *BMG* was allowed and

---

[6] Defendants also take issue with a handful of inadvertent (and soon corrected) issues related to building permits. DB at 9; ECF No. 119 ¶¶ 6-8; JA-72 ¶¶ 229-232; ECF No. 99-4; JA-1027-1035. To suggest that the entire Project must be terminated rather than have the applicant correct them further demonstrates the Town's bias.

continued to build homes, *including the specific homes* at issue in that litigation. *See supra.* In contrast, Defendants have pursued scorched-earth tactics to terminate all development of the Project. SPA-39-41, JA-756-59. Today, *no* infrastructure or "compliant" homes can be built.

## V. DEFENDANTS IGNORE THIS COURT'S HOLDING IN *SUNRISE DETOX*.

### A. Plaintiffs' Compensatory Damages Claims Are Ripe.

Defendants ignore that "when a public official violates constitutional or statutory rights of citizens to equal treatment, we allow resort to the federal courts to vindicate those rights, without requiring the offended person to exhaust potentially available state remedies first," although "[i]n such cases, ... the victim of discrimination normally seeks compensation, in the form of money damages, for the violation of his or her rights." *Sunrise Detox V, LLC v. City of White Plains*, 769 F.3d 118, 123 (2d Cir. 2014). *See* DB at 31-32. Plaintiffs have claims for damages (which were not pleaded in *Sunrise Detox* but were pleaded here) against the Town and its officials for such harm. OB at 42-44; JA-134-135. Further, Defendants' statement that such challenge for dignitary injuries was "rejected" in *BMG* (DB at 31) is untrue; no such claim was made or analyzed by the Court.

The Eastern District of New York recently held that "claims based on injuries [plaintiff] allegedly suffered from exposure to a discriminatory process itself—

11

independent of the denial of its change-of-zone application—are ripe *even absent a final decision* under the principles recognized in *Sunrise Detox*." *Concern for Indep. Living, Inc. v. Town of Southampton, New York, Town Bd. of the Town of Southampton*, No. 2:24-CV-7101 (NJC) (JMW), 2026 WL 707387, at \*7 (E.D.N.Y. Mar. 12, 2026).

B. <u>Plaintiffs' Claims Against the Town's Discriminatory Anti-Hasidic Zoning Policy Are Ripe.</u>

*Sunrise Detox* also held that "a plaintiff need not await a final decision to challenge a zoning policy that is discriminatory on its face, . . . ." *Sunrise Detox*, 769 F.3d at 123 (citation omitted); *see* OB at 35-41. Plaintiffs have alleged acts demonstrating just such a policy here, including more than nineteen examples evidencing the Town's discriminatory policy. *See* OB at 37-40.

Defendants cannot challenge the *Sunrise Detox* principle; instead, they (a) make factual arguments about the evidence that are inappropriate on a motion to dismiss; and (b) incorrectly claim that the examples all arise from one land use decision, the ZBA determination on certain building permits. DB at 31. However, the ZBA's decision is but one part of this policy. The wholesale suspension of approvals, illegal taxation of properties,[7] increase in fees, designating a known bigot

---

[7] *See* OB at 37; *Lost Lake Resort, Inc. v. Bd. of Assessors for Town of Forestburgh,* 222 A.D.3d 1091, 1092-95 (2023).

12

as the Town's "point person," repeal of the PDD law, adoption of moratoria, creating new rules, colluding with anti-Hasidic members and officers of private Clubs, etc. (*see* OB at 37-40) are not part of the ZBA denial.

Such evidence–not present in *BMG*–together with the statements of Town officials and those directing them, demonstrates their deeply entrenched hostility toward Hasidic Jews. The ZBA denial was only one piece of this effort. Moreover, the "demographics" of potential home buyers was not the basis of the zoning board's decision in *BMG*, as here. For these reasons, Plaintiffs need not seek additional remedies to challenge the Town's discriminatory zoning policy.

C. <u>Defendants Fail to Address the Town's Manipulation of the Zoning Process.</u>

The Court has also found that a "final decision" is unnecessary where a plaintiff challenges "the manipulation of a zoning process out of discriminatory animus to avoid a final decision, *Groome Res. Ltd. v. Parish of Jefferson,* 234 F.3d 192, 199-200 (5th Cir. 2000)." *Sunrise Detox*, 769 F.3d at 123. Plaintiffs' Amended Complaint is replete with such allegations (*see* OB at 41-44), and again Defendants ignore this principle. *See Vill. Green At Sayville*, 43 F.4th at 294 ("[A] plaintiff need not await a final decision to challenge . . . the manipulation of a zoning process out of discriminatory animus to avoid a final decision." (internal quotation marks omitted) (quoting *Sunrise Detox*)); *Lubavitch of Old Westbury, Inc. v. Inc. Vill. of*

*Old Westbury*, No. 208CV5081DRHARL, 2021 WL 4472852, at *15 (E.D.N.Y. Sept. 30, 2021) (holding that Orthodox Jewish Plaintiffs' as-applied land use claims were ripe without a final decision when Plaintiffs alleged that Defendants "manipulated [the land-use application] process out of discriminatory animus to avoid a final decision." (internal quotation marks omitted) (quoting *Sunrise Detox*)).

## VI. DEFENDANTS FAIL TO REBUT PLAINTIFFS' ARGUMENTS REGARDING FUTILITY.

### A. Defendants Concede the Town Lacks Discretion to Grant Variances, and Modifications to the PDD Zoning Are Unavailable.

Defendants ignore and therefore concede that the district court erred in holding that Plaintiffs must seek relief "in the form of a variance application to the Town Board" before their claims became ripe (SPA-18), as neither the Town Board nor the ZBA has the authority to grant such a variance. OB at 27-32.

Instead, Defendants claim "[t]he Town Board retains jurisdiction to modify the PDD conditions" (DB at 23), even though:

1. The PDD law allowing modifications has been repealed. *See* OB at 28-29; JA-1383 ("PDD Local Law 3 of 2011, as amended, was repealed under Local Law 1 of 2020"); JA-522-526; JA-54 ¶ 106.

2. Plaintiffs' Amended Complaint alleges that Lost Lake's PDD zoning cannot be amended because of the repeal. JA-101 ¶ 431.

14

3. In repealing the PDD Law, Defendants *admitted* that the "repeal <u>prevents a modification</u> of the existing PDD . . . ."  ECF No. 117-25 at 3 (emphasis added).

4. The ZBA has interpreted the Project approval, the PDD Law, and the PDD Law repeal as meaning that the Project's approval remains valid "only to the extent [it] complies with . . . all Project approval terms, conditions, and restrictions discussed above," and therefore modifications that would be inconsistent with the same are not permitted.  JA-1383.

5. The Town Board lacks authority "to interpret the local zoning law," *Swantz v. Plan. Bd. of Vill. of Cobleskill*, 34 A.D.3d 1159, 1160 (2006); N.Y. Town Law § 267-b (McKinney); and therefore cannot override that ZBA determination.

Since "a property owner need not pursue such applications when a zoning agency lacks discretion to grant" such relief, *Murphy*, 402 F.3d at 349, Plaintiffs' claims are ripe.

Regardless, seeking a *legislative* remedy (amendment of the PDD zoning) was not an issue in *BMG*, contrary to Defendants' claim (DB at 3).  The proper inquiry focuses on the regulatory body's application of existing law through administrative mechanisms, not on compelling a plaintiff to petition the legislature to change that law.  "[F]inality does not require Plaintiffs to stay on the administrative treadmill

15

and head back to the Town Board to seek 'review or further consideration' . . . or 'permission to deviate from the original approvals.' . . . Forcing Plaintiffs to return to the Town Board is tantamount to making them start from scratch, which will add years and enormous costs to the project, and is not required for their claim to be ripe." ECF No. 50 at 3 (Statement of Interest, U.S. Department of Justice).

B. Defendants Ignore Overwhelming Evidence that the Town has "Dug In Its Heels."

Defendants ignore both the allegations in Plaintiffs' Complaint and the overwhelming evidence demonstrating an organized campaign to prevent Hasidic Jews from residing in the Town, *see generally* OB at 3-4, 6-11, 32-35, incorrectly claiming that it is limited to "[a] single email."[8] DB at 28. Such evidence[9] includes far more than one email, including antisemitic statements by or circulated to Town officials (including its Supervisor, former Town official and board member of the Hartwood Club Justin Evans, Defendant Town Board member Budofsky,

---

[8] Defendants' suggestion that the email was warranted, based on an incident at the time in the region involving a non-Hasidic developer convicted of fraud, further demonstrates discriminatory intent behind the communication; namely, that Jews are inherently deserving of heightened suspicion.

[9] This animus prompted statements by both the United States Department of Justice and the Attorney General of New York. *See* Statement of Interest of the United States of America (ECF No. 181) at 4 (Mar. 7, 2025); Letter from Letitia James, Att'y Gen. of N.Y., to Jay Clayton, Interim U.S. Att'y, S.D.N.Y. at 2 (May 5, 2025) (https://perma.cc/8YCB-AY5D).

Defendant Building Inspector Gabbard, the ZBA, and others) and numerous other actions targeting Plaintiffs, including illegally increasing property taxes, issuing baseless "stop work orders," increasing development fees ten-fold, and more. OB at 37-40. To the extent that antisemitic bias was the motivation of local residents working together with the Town, "a governmental body may not escape liability under the Equal Protection Clause merely because its discriminatory action was undertaken in response to the desires of a majority of its citizens." *United States v. Yonkers Bd. of Educ.,* 837 F.2d 1181, 1224 (2d Cir. 1987); *see also Palmore v. Sidoti,* 466 U.S. 429, 433 (1984) ("Private biases may be outside the reach of the law, but the law cannot, directly or indirectly, give them effect."). The Town Board has acted in lockstep by adopting ordinances and Resolutions designed to keep Hasidic Jews out.

When mandating that Plaintiffs begin the application and SEQRA process anew, the Town adopted a strategy recommended by Justin Evans, who stated in an email:

> I would strongly encourage you to immediately gather the major leaders and stakeholders in town to discuss this clear threat and the potential defenses the town can employ. . . . I hope you'll ask for help and circle the wagons....

JA-1570; OB at 39 (describing coordination between Town, Hartwood and Merriewold Clubs); ECF No. 100-60 at 4 (letter from Hartwood Club asking Town to reopen SEQRA review). Evans, referring to Hasidic Jews, continued: "I do fear

17

their wanton destruction of the towns and school districts... they take over, like locusts - killing everything they encounter, draining every last resource, bleeding the beast ... , and destroying Forestburgh as we know and love it today."[10]  JA-1570. Deputy Town Supervisor and Defendant Budofsky subsequently stated to Evans, "[j]ust know that your concerns are my concerns and I will advocate for any measures that protect our town."  JA-1572 (emphasis added).

The "single email" by Defendant Robbins stated "we're energized and have the cash to fight and make their lives miserable…...why would they want to go to a community that is going to fight them tooth and nail".[11]  Robbins was appointed as Planning Board chair, tasked with leading the opposition against Lost Lake, and responsible for carrying out its anti-Hasidic policy, as he was:

1.  The "*point person*" with respect to Lost Lake.  JA-140-141 ¶¶ 6-7, JA-142; JA-366 ¶ 26; JA-1532 (emphasis added).

2.  The "*Town Board's agent*" in "assuring [Lost Lake's] compliance . . . ." JA-1582 (emphasis added).

---

[10] *See also* ECF No. 177-1 at 2 (Evans discussing "Transylvanian Hasidic brainwashing").

[11] The email evidence was obtained through a small sampling of Town ESI custodians during initial discovery proceedings.  *See* OB at 7 n.4.  *See also* ECF No. 177-4 (Robbins stating "Do you think [Hassids] have any interest in fishing? or Hunting? or being among people who include anti-semites."); ECF No. 177-5 (Robbins discussing Town's "fear of Hasidim"); ECF No. 177-14 (Robbins discussing Hasidic sects).

3. A "town official with _direct responsibility_ over the review and approval of [Lost Lake] site plans and compliance . . . ." JA-1569 (emphasis added).

4. In attendance at Town Board executive sessions discussing Lost Lake. JA-61-62 ¶¶ 144-145; JA-73 ¶¶ 237-238; JA-103 ¶ 445; JA-106 ¶ 465.

The Town organized a campaign targeting Plaintiffs _because_ they are Hasidic Jews. OB at 6-7; _see also_ JA-1597 (Robbins coordinating legal representation regarding Lost Lake in 2020); JA-1601 (Robbins coordinating denial of Project permits in 2021); JA-1574 (Robbins responding to Evans email, wherein Evans states: "They will most likely do to Forestburgh what they did Lakewood NJ and Bloomingburg.").

The overwhelming evidence of antisemitic animus hardly constitutes mere "subjective doubts" (DB at 28), but rather demonstrates that the Town has "dug in its heels and made clear that all such applications will be denied." _Murphy_, 402 F.3d at 349; _see Sherman_, 752 F.3d at 563 ("Seeking a final decision would be futile because the Town used–and will in all likelihood continue to use–repetitive and unfair procedures, thereby avoiding a final decision.").

## VII. DEFENDANTS' ARGUMENT THAT THERE ARE NO IMMEDIATE, INDEPENDENT INJURIES SHOULD BE REJECTED.

A plaintiff alleging discrimination is not subject to the final-decision requirement if "he can show that he suffered some injury independent of the

challenged land-use decision." *Sunrise Detox*, 769 F.3d at 123. Several actions taken both prior to and subsequent to the ZBA decision constitute such independent injuries. OB at 37-40. Defendants label these actions as "merely the administrative stepping-stones, enforcement mechanisms, and municipal operations surrounding the core dispute" (DB at 35). But they constitute independent harms that go far beyond the harm caused by the ZBA's "challenged land-use decision" that the Town claims was not "final."

Critically, the ZBA Decision stated that the **"**<u>Project PDD approval remains valid . . . .</u>" JA-1383 (emphasis added). In contrast, the Town's Resolution and subsequent actions suspended the approvals, and deemed any further development as "no longer authorized"[12]:

> BE IT FURTHER RESOLVED that all Town issued permits and approvals, including the Resort Project's 2011 PDD Approval and 2013 Conditional Final Approval <u>are hereby suspended</u> and any construction or land disturbance activities permitted thereunder <u>are no longer authorized</u> unless and until Developer submits its proposed changes to the Town Board to undergo additional review under SEQRA, and obtain necessary and appropriate modifications to the terms and conditions of the Project Approvals; . . . .

JA-772 (emphasis added). This is most certainly an independent harm.

---

[12] The ZBA does not have the authority to prohibit construction, as the Town Board did. *See* N.Y. Town Law § 267-b (McKinney) ("Permitted action by board of appeals").

20

The ZBA's land-use decision that Defendants wrongly argue was not a "final" decision under *Williamson County* and *BMG* related to the denial of specific building permits the ZBA claimed were non-conforming with the Project zoning and site plan approval conditions, and *explicitly stated that the Project could otherwise move forward*. What the Town did subsequently–suspending *all* approvals and prohibiting *any* construction or infrastructure development–went far beyond the ZBA's decision. These are "injur[ies] independent of the challenged land-use decision." *Sunrise Detox*, 769 F.3d at 123; *see also Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 90 (2d Cir. 2002) (holding that in contrast to unripe challenge to building permit denial, plaintiff's "claim of retaliation is based upon an immediate injury"); *Vill. Green At Sayville*, 43 F.4th at 296. Plaintiffs now became prohibited not only from building the homes at issue in the building permit applications, but *any* homes. Moreover, they were prohibited from continuing to work on *any* infrastructure and utility work, including that which would serve lots that had already been sold to others. JA-266 ¶ 19.

21

## VIII. DEFENDANTS HAVE NOT REBUTTED PLAINTIFFS' ARGUMENT THAT THE DISTRICT COURT ERRED IN DISMISSING THEIR FACIAL CHALLENGES TO THE TOWN BOARD RESOLUTIONS.

A. Plaintiffs State Facial Claims When Alleging Defendants' Facially Neutral Policy Was Motivated by Discriminatory Animus and Has an Adverse Effect.

Defendants wrongly state that a facial challenge concerns "only the text of the statute itself" and not the motive behind the law. DB at 29 (internal quotation marks, citation omitted). One type of facial challenge is against "a facially neutral policy that has an adverse effect and that was motivated by discriminatory animus." *Pyke v. Cuomo*, 258 F.3d 107, 110 (2d Cir. 2001); *see* OB at 46-48; *Washington v. Davis,* 426 U.S. 229, 240–41 (1976) (explaining that a facially neutral law or policy nevertheless violates the Equal Protection Clause if it has both a discriminatory purpose and effect).

Defendants rely on *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 915 F. Supp. 2d 574, 611 (S.D.N.Y. 2013), *aff'd*, 945 F.3d 83 (2d Cir. 2019) ("*Tartikov*"), to argue that Plaintiffs' claims here are as-applied claims. DB at 30. But *Tartikov* stands for precisely the opposite proposition. *Tartikov* held that facially neutral ordinances adopted with alleged discriminatory motive and which have a discriminatory effect are *facially* invalid, even though plaintiffs' "as-applied" challenges were not ripe because no application was made. *Tartikov*, 945 F.3d at 107, 111.

22

Here, as in *Tartikov*, Plaintiffs challenge the Town Board's legislative Resolutions on their face as being motivated by discriminatory animus. *See supra*; JA-39-40 ¶¶ 9-11, JA-103-104 ¶¶ 445-448, JA-106 ¶¶ 465-467 (allegations describing discriminatory motivation behind Resolutions).

Plaintiffs also alleged that the challenged Resolutions have discriminatory effect, "unnecessarily delay[ing] the Project by years, causing significant harm to the Plaintiffs." *See* JA-39 ¶10; JA-110-112 ¶¶496-516 (describing effect on Plaintiffs and disproportionate impact of Town's actions on Hasidic Jews); JA-40 ¶12 (Resolutions "prevented the Halberstams from obtaining housing in the Project"), JA-111 ¶502 ("demand for housing in the Hasidic Orthodox Jewish community in the region indicates that a large number of purchasers likely will be Hasidic Orthodox Jews."). They also allege that the Town's actions, which prevent Plaintiffs from obtaining building permits "discriminates against Hasidic Orthodox Jews," "disproportionately impacts Hasidic Orthodox Jews," and the Town has treated "the Developer Plaintiffs differently and worse than other similarly situated applicants." JA-111-112 ¶¶509, 508, 515. *See Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 619-20 (2d Cir. 2016) (finding discriminatory effect when a restriction on the development of multi-family housing decreased the availability of housing to minorities).

"[A] valid equal protection claim can be based on a showing that any individual has been negatively affected or harmed by that discriminatory law or

23

policy based on race, even if there is no disparate impact to members of that racial class in the aggregate." *Chinese Am. Citizens All. of Greater New York v. Adams*, 116 F.4th 161, 173 (2d Cir. 2024) (footnote omitted).  Such negative effects include additional procedural hurdles, as the Town has imposed here.  *See Robinson v. 12 Lofts Realty, Inc.,* 610 F.2d 1032, 1039 (2d Cir. 1979) (finding discriminatory effect when Black plaintiff was required to complete extra procedural hurdles); *Tartikov*, 945 F.3d at 124 (finding discriminatory effect when compliance with a Wetlands Law would have forced Plaintiffs to either regrade their current property or purchase new land); *Stewart B. McKinney Found., Inc. v. Town Plan & Zoning Comm'n of Town of Fairfield*, 790 F. Supp. 1197, 1219 (D. Conn. 1992) (finding discriminatory effect when town and zoning commission required plaintiff to submit to additional procedures).

Here, Plaintiffs cannot obtain building permits–even permits that are unquestionably in compliance with Project zoning and site plan approvals–build infrastructure or otherwise proceed with the Project unless they spend additional years and substantial resources restarting the SEQRA process for a development that has already been approved.  JA-39 ¶ 9; *see id.* ¶ 10.  The Town Board also approved a "Notice" that was sent to various County, Federal and State agencies to prevent the Project from moving forward.  JA-39 ¶ 9, JA-105 ¶¶ 456-458; JA-766-768.  They have also suffered substantial financial impacts.  JA-113-114 ¶¶ 521-522, 524-526.

24

The Halberstam Plaintiffs are unable to obtain housing in the Project because of the Town's Resolutions. JA-37 ¶ 7, JA-40 ¶ 12, JA-110 ¶¶ 497-498.

Defendants incorrectly equate "discriminatory effect" in an Equal Protection challenge with a "final decision" under *Williamson County's* prudential ripeness doctrine. DB at 30-31. These concepts are not the same, and Defendants offer no authority in support of their position. The distinction is unequivocally demonstrated by *Tartikov* itself, where there was no "final" land use decision under *Williamson County*, but the challenged ordinances were found to have discriminatory effect. *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 138 F. Supp. 3d 352, 417-18 (S.D.N.Y. 2015), *aff'd*, 945 F.3d 83 (2d Cir. 2019) (noting discriminatory effect where a zone change or text amendment is a "legislative process" that "Plaintiffs allege would be cumbersome and, given the hostility of Defendants, fraught with indefinite delay and uncertainty.").

      B. <u>Plaintiffs Have Standing to Challenge the Parks and Playground Fee Increase.</u>

Defendants wrongly argue that the Parks and Playground fee increase "specifically exempt[s] Lost Lake . . . ." DB at 29. There was no such exemption in the Town's action increasing the fee from $200 to $2,000 per lot. JA-352. In fact, the minutes of the Town Board's 2020 meeting adopting the fee increase state that later phases of Lost Lake would be subject to the higher fee. *See id.* (Lost Lake

25

"paid the lower amount for phase one, but there are several more phases to come.").

Nothing in the 2011 PDD Approval or the Town Board's minutes exempt Lost Lake

from the Parkland Fee or its increases. Defendants' argument to the contrary, based

solely on the Town Supervisor's self-serving declaration, should be rejected.

## IX. DEFENDANTS FAIL TO REBUT PLAINTIFFS' ARGUMENT THAT THEIR FHA RETALIATION CLAIM WAS IMMEDIATELY RIPE.

While the district court failed to separately address Plaintiffs' FHA retaliation

claim under 42 U.S.C. § 1317, Defendants ignore the text of Section 1317, the

Court's controlling *Dougherty* decision, and similar precedent holding that such

retaliation constitutes an immediate and independent injury, ripe for resolution.

*Dougherty*, 282 F.3d at 90 (plaintiff's "First Amendment retaliation claim should

not be subject to the application of the *Williamson* ripeness test."). OB at 35-41.

Rather, Defendants argue for a new and unsupported "inextricably

intertwined" standard and suggest that the Court merely look at the "gist" of the

claim (DB at 33, 37), citing *Sunrise Detox.*, 769 F.3d at 123, but no precedent

supports such a radical abdication of the federal courts' jurisdiction. *Sunrise Detox*

was neither an FHA case nor a retaliation case, nor did it create a "gist" standard or

even use that term. *Id*.

Here, the "adverse action[s]" regulated by Section 3617 represent a separate

and immediate injury protected by the FHA. Plaintiffs engaged in FHA-protected

activity, and Defendants retaliated against them through baseless Notices of Violation, Stop Work Orders, passing resolutions prohibiting what the ZBA allowed, and filing a lawsuit against Plaintiffs in state court. Each of these retaliatory acts represents an injury independent of any land use issue.

The district court's decision is contrary to others in this Circuit. In a similar case involving revocation of a building permit after a plaintiff filed suit challenging the denial of another building permit, this Court held that the retaliation claim was an immediate and independent injury. *Dougherty*, 282 F.3d at 90-91; *see also Bulson v. Town of Brunswick,* No. 1:24-CV-503 (LEK/DJS), 2025 WL 743950, at *6-*7 (N.D.N.Y. Mar. 7, 2025) (noting that the injury in *Dougherty*'s retaliation claim was "immediate" and "independent from the challenged land-use decision"), *appeal withdrawn*, No. 25-734, 2025 WL 2319842 (2d Cir. June 23, 2025). *See also Patriots Way, LLC v. Marconi*, No. 06–CV–874, 2007 WL 988712, at *4 (D. Conn. Mar. 30, 2007) (plaintiff's retaliation claim ripe despite the lack of a final decision because plaintiff allegedly suffered immediate economic injury); *Sherman v. Town of Chester,* No. 12 CIV.647 ER, 2013 WL 1148922, at *11 (S.D.N.Y. Mar. 20, 2013) ("[I]f the injury created by retaliation is immediate and does not require additional process to determine its scope, then it is justiciable while the other claims remain unripe."), *aff'd in part, vacated in part on other grounds, remanded*, 752 F.3d 554 (2d Cir. 2014); *Osborne v. Fernandez*, No. 06-CV-4127CSLMS, 2009 WL

27

884697, at *31 (S.D.N.Y. Mar. 31, 2009) ("In the retaliation context, a claim ripens once the retaliatory action is taken" (citing *Dougherty*)), *aff'd*, 414 F. App'x 350 (2d Cir. 2011).

## X. DEFENDANTS FAIL TO REBUT PLAINTIFFS' ARGUMENTS THAT THEIR DUE PROCESS CLAIMS ARE RIPE.

Defendants' argument that Plaintiffs lack a property interest must be rejected. OB at 49. Plaintiffs had a clear entitlement to the building permit, as "the act of the building inspector in granting or denying the building permit is ministerial; it does not involve exercise of discretion." *Filmways Commc'ns of Syracuse, Inc. v. Douglas*, 106 A.D.2d 185, 186, *aff'd,* 65 N.Y.2d 878 (1985). *See* JA-68 ¶¶ 192-194 (Code Enforcement Officer "'<u>shall</u> issue a building permit if the proposed work is in compliance with the applicable requirements of the Uniform Code and Energy Code.'" (quoting Town of Forestburgh Code § 68-4(F))).

With respect to Plaintiffs' procedural due process claim, Defendants' argument that there is an adequate post-deprivation remedy rings hollow where Plaintiffs were denied the opportunity to bring "'an Article 78 proceeding'" (DB at 39-40), as the district court determined that such a proceeding is not "ripe" and dismissed it on that basis alone. SPA-25. No post-deprivation remedy was therefore available.

Regardless, Defendants challenged only the ripeness of Plaintiffs' claims and did not address their merits. The district court dismissed solely on ripeness grounds. Accordingly, these additional defenses would have been untimely raised. *See supra*, § II.

## XI.  PLAINTIFFS' STATE LAW CLAIMS ARE RIPE.

Defendants, like the district court, cite no authority to support their contention that Plaintiffs' claims brought under New York statutory and tort law are not ripe. DB at 40-42.

### A. New York Civil Rights Law § 40-c.

Plaintiffs' New York Civil Rights Law § 40-c claim describes a harm independent of a final land use decision: "No person shall, because of race, creed . . . be subjected to any discrimination in his or her civil rights . . . in the exercise thereof, by . . . the state or any agency or subdivision of the state." N.Y. Civ. Rights Law § 40-c(2) (McKinney). "This statute is applicable to suits alleging retaliation." *Hyman v. Cornell Univ.*, 834 F. Supp. 2d 77, 84 (N.D.N.Y. 2011), *aff'd,* 485 F. App'x 465 (2d Cir. 2012). Thus, for the reasons described above, § IX, this claim is ripe.

B. Interference with Prospective Business Advantage.

The Defendants offer no authority suggesting a claim for tortious interference with business advantage is subject to *Williamson County's* finality requirement. Plaintiffs have plausibly pleaded the four elements: (1) the plaintiff had business relations with third parties; *see* JA-111 ¶¶ 503-506 (individuals intending to purchase homes), JA-114 ¶¶ 527-529 (corporations providing services to properties denied building permits); (2) interference with those business relations due to an inability to develop the Project; (3) that Defendants acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the Defendants' actions injured the relationship by preventing such purchases and services. *See Mehrhof v. Monroe-Woodbury Cent. Sch. Dist.*, 168 A.D.3d 713, 714 (2019). These injuries are ripe from the moment the elements of the tort are met, and *Williamson County* has never been extended to such claims.

C. N.Y. C.P.L.R. Article 78.

Neither do Defendants, again like the district court, specifically address the "ripeness" of Plaintiffs' Article 78 appeal of the ZBA's decision as arbitrary, capricious, and an abuse of discretion, which is not subject to *Williamson County*. *See* N.Y. C.P.L.R. §§ 7801, *et seq.* (McKinney). The ability of Plaintiffs to appeal the ZBA's decision is in no way contingent upon what the Town might later do. Rather, "[a]ny person . . . aggrieved by any decision of the board of appeals . . . may

30

apply to the supreme court for review by a proceeding under article seventy-eight . . . ." N.Y. Town Law § 267-c(1) (McKinney); *see also Westchester Day Sch. v. Vill. of Mamaroneck*, 417 F. Supp. 2d 477, 559-60 (S.D.N.Y. 2006) (federal court has authority to review Article 78 claim), *aff'd,* 504 F.3d 338 (2d Cir. 2007); N.Y. C.P.L.R. § 7801. ZBA determinations including interpretations of zoning law such as that at issue here can be challenged through Article 78 proceedings. *Parsons v. Zoning Bd. Of Appeals*, 4 A.D.3d 673, 673, 673-74 (2004).

Defendants do not address the ripeness of Plaintiffs' Article 78 claim; they instead argue that the district court could have declined to exercise supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(c)(3). DB at 41-42. However, it did not do so, but rather grouped them together with Plaintiffs' "land use claims" and dismissed them as unripe (SPA-25), which was error. Nor was such error inconsequential. Had it dismissed these claims under section 1367(c)(3), Plaintiffs could have refiled them in state court pursuant to 28 U.S.C. § 1367(d). *See Jinks v. Richland Cnty.*, 538 U.S. 456, 459 (2003).

31

## CONCLUSION

For the foregoing reasons, and for the reasons stated in Plaintiffs-Appellants' Opening Brief, the district court's Order granting Defendants' Motion to Dismiss should be reversed and this matter remanded to the district court for further proceedings.

Dated: March 26, 2026

/s/ Roman P. Storzer
ROMAN P. STORZER
STORZER & ASSOCIATES, P.C.
*Attorneys for Plaintiffs-Appellants*
1025 Connecticut Avenue, NW
    Suite 1000
Washington, DC 20036
(202) 857-9766

32

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B), the word limit of Local Rule 32.1(a)(4) (A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f): this document contains 6,947 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font Times New Roman.

Dated: New York, New York
     March 26, 2026